# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANDREW TAIHO CHIANG**,                    Chapter 7
     Debtor                              Case No. 14-14344-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOHN O. DESMOND, CHAPTER 7
TRUSTEE,**
     Plaintiff,

v.                                          Adv. P. No. 15-1140
**STEPHEN T. CHIANG AND
CHIALIN T. CHIANG**,
     Defendants


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by the

Plaintiff in this adversary proceeding, the Chapter 7 Trustee of the Debtor (the "Plaintiff"

or "Trustee"), on Counts I and III of his Complaint, through which he seeks to avoid an

alleged fraudulent transfer by the Debtor to the Defendants, Stephen Chiang and Chialin

Chiang, who are the Debtor's wife and son.  The Defendants filed an Opposition to the

Trustee's Motion, together with the Affidavit of Andrew Taiho Chiang (the "Debtor" or

Mr. Chiang"), as well as the Affidavits of the Defendants, the Debtor's spouse, Chialin T.

1

Chiang ("Mrs. Chiang"), and his eldest son, Stephen T. Chiang ("Stephen") (jointly, the "Defendants"). The Trustee filed a Reply to the Defendants' Opposition, and the Court heard the Motion and the Opposition on November 22, 2016 and took the matter under advisement.

The parties filed a Joint Pre-Trial Memorandum on July 22, 2016, prior to the filing of the Trustee's Motion for Summary Judgment. In their Joint Pre-Trial Memorandum, they agreed that this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (H); the Defendants have consented to the entry of a final order by this Court.

The issue presented is whether the Trustee sustained his burden of proving either an actual or fraudulent transfer by the Debtor of an interest in his residence to his son so that the interest can be avoided and recovered for the benefit of the estate. For the reasons set forth below, the Court shall grant the Trustee's Motion for Summary Judgment.

## II. FACTS

### A. Background[1]

The Debtor filed a Chapter 7 petition on September 15, 2014, together with Schedules, a Statement of Financial Affairs, and other required documents. On Schedule A-Real Property, he listed an ownership interest in his residence as follows:

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

Debtors [sic] residence, a single family home with an address of 563 Marrett Road, Lexington MA 02421, as evidenced by a deed from Andrew T. Chiang and Chialin T. Chiang to Chialin T. Chang, Andrew T. Chiang, and Stephen T. Chiang as joint tenants, recorded on June 28, 2012 at the Middlesex South County Registry of Deeds in Book 59397 at Page 44.

Homestead recorded by the Debtor on August 27, 2014 in Book 84144 at Page 142.

The Debtor listed the current value of his interest in 563 Marrett Road, Lexington, Massachusetts (the "Property") as $327,024.00 and the amount of a secured claim encumbering the residence as $381,632.25.  On Schedule B-Personal Property, he listed, among other assets, a business checking account and a joint checking account at Eastern Bank, as well as three IRAs with a total value of approximately $256,000.00.  On Schedule C-Property Claimed as Exempt, he claimed the state exemptions for the assets listed on Schedule B.  On Schedule D-Creditors Holding Secured Claims, he identified "Provident Funding" as the holder of a mortgage granted in 2012 in the amount of $381,632.25.  On Schedule H-Codebtors, the Debtor identified the Defendants as co-debtors with respect to the secured claim of Provident Funding.   On October 25, 2014, the Debtor filed an amended Schedule C for the purpose of claiming a Massachusetts homestead pursuant to Mass. Gen. Laws ch. 188, § 1 with respect to the Property.

The Trustee requested a bar date on October 29, 2014.  On October 30, 2014, the Bankruptcy Noticing Center notified all creditors listed on the Debtor's matrix that the deadline for filing proofs of claim was January 28, 2015. Only one creditor, Amos Financial LLC ("Amos"), filed a proof of claim for a money judgment in the sum of $145,039.50.  The Debtor identified Amos on Schedule F-Creditors Holding Unsecured

Nonpriority Claims as the holder of a claim in the sum of $153,008.01 arising from "2007 loan to business owned by the Debtor with his partner with personal guarantees." On Schedule I-Current Income of Individual Debtor(s), the Debtor revealed that he is unemployed and that his sole source of income is a monthly contribution of $1,000.00 from an undisclosed person or entity. He also disclosed in response to question 11 on Schedule I "other regular contributions" from his son as follows: "Son's Contribution" as $-0-.

On July 14, 2015, the Trustee filed a four-count Complaint against the Defendants pursuant to 11 U.S.C. § 544 and Mass. Gen. Laws c. 109A, to avoid a fraudulent transfer of the Property by the Debtor to Mrs. Chiang, to their son, Stephen, and to sell the Property free and clear of the interest of the non-debtor co-owner, Mrs. Chiang. The Trustee set forth the following counts: Count I: Fraudulent Transfer under Mass. Gen. Laws ch. 109A, § 5(a)(1) against the Defendants; Count II: Fraudulent Transfer under Mass. Gen. Laws ch. 109A, § 5(a)(2) against the Defendants; Count III: Fraudulent Transfer under Mass. Gen. Laws ch. 109A, § 6(a) against the Defendants, and Count IV: Sale of Co-owner's Interest in Property under 11 U.S.C. § 363(h) against Mrs. Chiang.

B. Statement of Undisputed Facts

The Trustee filed a Statement of Undisputed Facts in connection with his Motion for Summary Judgment. The undisputed facts set forth in the Summary Judgment Statement, however, are identical to the Undisputed Facts set forth in the Joint Pretrial Memorandum. Thus, paragraphs 1-60 set forth in the Statement of Undisputed Facts

4

corresponds to paragraphs 35-94 set forth in the Joint Pretrial Memorandum.    The undisputed facts are reproduced below with minimal modifications.

On October 29, 1998, the Debtor and Mrs. Chiang purchased the Property as statutory tenants by the entirety. The Property is a single family home and is not used in the production, transmission or distribution for sale of electric energy, or natural or synthetic gas for light, heat or power.    The Debtor and Mrs. Chiang did not obtain financing to acquire the Property, paying the purchase price of $646,000.00 in cash.

In or around March 2003, the Debtor became the one-third owner and a director of Wideband Solutions, Inc., a Massachusetts corporation that was engaged in the business of developing audio software.    Mr. Chiang worked as operations manager and was involved in the manufacturing of Wideband Solutions, Inc.'s products.    In or about January 2007, the Debtor, Wideband Solutions, Inc. and others were named as defendants in a lawsuit brought by ClearOne Communications, Inc. ("ClearOne") in the 3rd District Court of Salt Lake County, Utah.    The action was removed to the United States District Court for the Central District of Utah, Case No. 2:07-CV-00037-DN.    In its action, ClearOne alleged, among other things, that the defendants misappropriated trade secrets and breached their fiduciary duties (the "Utah Case").[2]

---

[2] The Court takes judicial notice that the defendants in the Utah Case were the Debtor, Jun Yang, Lonny Bowers and WideBand Solutions, Inc.    ClearOne identified the Debtor as a Vice President of WideBand, Lonny Bowers as the President, and Jun Yang as the Chief Technology Officer.    In addition, it alleged that the three individual defendants founded WideBand in July of 2003.    The background pertinent to the litigation is set forth in ClearOne Commc'ns, Inc. v. Chiang, 608 F.Supp.2d 1270 (D. Utah 2009).

Approximately six months after the commencement of the Utah case, on August 10, 2007, the Debtor signed an unconditional personal guaranty of a $100,000.00 note between Wideband Solutions, Inc. and Sovereign Bank ("Sovereign Note"). The Sovereign Note has not been paid.

On November 5, 2008, the jury in the Utah Case returned a special verdict in which it unanimously found that all defendants, including the Debtor, misappropriated trade secrets, that the misappropriation of trade secrets was willful and malicious, that the Debtor breached a fiduciary duty owed to ClearOne, and that the breach of the fiduciary duty was willful and malicious. On the same day, the jury in the Utah Case assessed punitive damages against the Debtor in the amount of $3,000,000.00, an assessment which was later reduced on legal grounds.

Approximately one week after the jury verdict, on November 13, 2008, the Debtor recorded a declaration of homestead on the Property. Less than two weeks later, on November 24, 2008, the Debtor obtained a loan in the amount of $417,000.00, which was secured by a first mortgage on the Property ("2008 Mortgage"). The 2008 Mortgage is discussed in more detail below.

On April 20, 2009, the United States District Court for the Central District of Utah entered an Order and Memorandum Decision in which it found that "[t]he most egregious instances of lack of good faith are found in the behavior of [co-defendant] Jun Yang and Andrew Chiang [Debtor]" and that "Mr. Chiang breached his fiduciary duty to ClearOne (he was a former owner and officer of ClearOne's predecessor) by taking confidential materials after signing an Asset Purchase Agreement that transferred those

6

materials to another entity, and by using such information and technology in products that directly competed with ClearOne. For that breach, the jury assessed $3,000,000.00 in punitive damages against him." The district court also stated: "Mr. Chiang, late in the litigation, made a 'sudden discovery' of materials he took in violation of the asset purchase agreement. His explanation on the stand for his late discovery and disclosure of these materials was less than convincing."[3] On April 21, 2009, final judgment entered in the Utah Case,[4] in which the Debtor and all other defendants were found jointly and severally liable for damages in the amount of $1,912,000.00, and the Debtor was found liable, individually, for exemplary damages in the amount of $637,332.00.

On April 27, 2009, ClearOne registered its foreign judgment from the Utah Case with the United States District Court for the District of Massachusetts, docket no. 09-mc-10125-NMG. On May 7, 2009, the United States District Court for the District of Massachusetts issued a writ of execution as to the Debtor. On June 19, 2009, ClearOne filed a motion, inter alia, to have the 2008 Mortgage subordinated to ClearOne's execution, alleging that the 2008 Mortgage constituted a fraudulent transfer pursuant to Mass. Gen. Laws c. 109A. The Debtor filed an opposition to ClearOne's motion and the matter was litigated.

On May 24, 2010, the United States District Court for District of Massachusetts issued a decision finding that the Debtor's 2008 Mortgage was a fraudulent conveyance

---

[3] *See* ClearOne Commc'ns, Inc. v. Chiang, No. 2:07-CV-37-TC, 2009 WL 1108800, at *5 (D. Utah April 20, 2009), *aff'd,* 432 F.App'x 770 (10th Cir. 2011).

[4] The judgment was not in fact final until August 9, 2011. *See* note 3, *supra.*

made with the actual intent to hinder, delay or defraud creditors.  On May 11, 2011, Amos, as successor in interest to Sovereign Bank with regard to the 2007 Sovereign Note, filed a complaint in the Superior Court of the Judicial District of New Britain, Connecticut, against, inter alia, WideBand Solutions, Inc. and the Debtor, seeking to collect the Sovereign Note, No. HHB-CV11-6013533-S ("Amos CT Action").  Amos was represented in the Amos CT Action by Leon Cameron of the Law Offices of Frank Peluso.

On September 15, 2011, Robert M. Wolfe returned a certificate of service indicating that he had mailed a copy of the "Writ, Summons, Amended Complaint, Motion to Cite in Party Defendant" to Andrew Chiang, 53 Marrett Road - - not 563 Marrett Road - - Lexington, Massachusetts 02421-7608.  Although the Debtor may not have been properly served with the summons and complaint, he had notice of the Amos CT Action because, on October 21, 2011, Lonny Bowers, a co-defendant in the Amos CT Action, emailed a copy of his Sur-Reply to achiang8@gmail.com.  The Sur-Reply contained a certificate of service in which Lonny Bowers indicated that he served the document via "U.S. Mail and/or Electronic Mail this 21st day of October, 2011" to, among others, Andrew Chiang at his home address of 563 Marrett Road, Lexington, MA 01867 and his email address, achiang8@gmail.com.  One of the Debtor's email addresses was achiang8@gmail.com.

In addition, on November 29, 2011, Leon Cameron sent an email to, among others, the Debtor attaching a copy of Amos's Motion in Limine.  The Motion in Limine contained a certificate of service indicating that the motion was sent via first class mail to, among others, Andrew C. Chiang at 563 Marrett Rd., Lexington, MA 02421-7608.  Moreover, on December 20, 2011, Leon Cameron sent an email to, among others, the

Debtor attaching a copy of Amos's Offer of Compromise in the amount of $60,000.00. The

Offer of Compromise contains a certificate of service indicating that it was sent via first

class mail to, among others, Andrew C. Chiang [sic] at 563 Marrett Rd., Lexington, MA

02421-7608. The Debtor never appeared in the Amos CT Action.

The Debtor has been unemployed since 2009. Mrs. Chiang is employed and has

earned an average of $39,936.00 for the years 2009 through 2014. Between 2006 and 2010,

the Debtor and Mrs. Chiang paid in excess of $175,000.00 in tuition, room, board, and

support for their son Stephen Chiang to attend college. Stephen also obtained loans and

grants to finance his education. Between 2007 and 2011, the Debtor and Mrs. Chiang paid

in excess of $175,000.00 in tuition, room, board, and support for their other son, Lee

Chiang, to attend college. Lee Chiang also obtained loans and grants to finance his

education. Neither the Debtor nor Mrs. Chiang obtained student loans to pay for their

children's college expenses.

On February 21, 2012 Mr. Chiang, individually, settled ClearOne's claims against

him - - claims which exceeded $2,500,000.00.

On June 28, 2012, the Debtor and Mrs. Chiang transferred the Property from

themselves as statutory tenants by the entirety, to themselves and Stephen, as joint

tenants, for consideration of $1.00 (the "Transfer"). At the time of the Transfer, Stephen

was 24 years old and residing in the Property with the Debtor and Mrs. Chiang.

As a result of the Transfer, the Debtor's ownership interest in the Property, had a

fair market value of $995,000.00, "decreased from a one-half interest [sic] in the Property

to a one-third interest."[5]   At the time of the Transfer, the Debtor, Mrs. Chiang, and

Stephen refinanced the 2008 Mortgage by executing an adjustable rate mortgage in favor

---

[5] Trustee's Statement of Undisputed Facts at paragraph 38, corresponding to the paragraph 72 in the Joint Pretrial Memorandum. The parties misstate the nature of a tenancy by the entirety.  Although "[a] husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety," *see* Mass. Gen. Laws ch. 209, §1,

> The nature of a tenancy by the entirety is . . . founded on the common-law doctrine of the unity of husband and wife as constituting in law but one person. A conveyance to a husband and wife as tenants by the entirety creates one indivisible estate in them both and in the survivor, which neither can destroy by any separate act. Both husband and wife are seised of such an estate per tout et non per my as one person, and not as joint tenants or tenants in common. Alienation by either the husband or the wife will not defeat the right of the survivor to the entire estate on the death of the other. There can be no severance of such estate by the act of either alone without the assent of the other, and no partition during their joint lives, and the survivor becomes seised as sole owner of the whole estate regardless of anything the other may have done.

Bernatavicius v. Bernatavicius, 259 Mass. 486, 487, 156 N.E. 685, 686 (1927).  *See also* Rahily v. Guermoudi, No. 15 MISC 000441(HPS), 2016 WL 797118 (Mass. Land Ct. March 1, 2016).  The full text of section 1 of Mass. Gen. Laws ch. 209, provides:

> The real and personal property of any person shall, upon marriage, remain the separate property of such person, and a married person may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if such person were sole. A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.

> The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.

of Mortgage Electronic Registration Systems, Inc. as nominee for Provident Funding

Group, Inc. [sic][6] which secured a note in the amount of $400,000.00 ("2012 Mortgage").

Although the note was not attached to any of the pleadings as an exhibit, the parties do

not dispute that it was payable in 30-years and that Stephen executed the note. As a result

of the refinancing, the monthly mortgage payment associated with the Property was

reduced from $3,567.03 to $2,869.27, a reduction of $697.76.  The initial interest rate was

2.5%, but that rate could decrease or increase between 2.25% and 7.5%.  The parties agreed

in open court that the 2008 Mortgage was a fixed rate mortgage with a 5.9% interest rate.

Stephen has never contributed to the mortgage payments or paid rent to live in the

Property.   Contrary to the Debtor's representation on Schedule I, Stephen pays the

family's cell phone bill, which is approximately $200.00 a month.

The Debtor's financial situation, including the value of his assets and the amount

of his liabilities, was essentially the same at the time of the Transfer as at the time of his

bankruptcy case filing.  At the time of the Transfer, the Debtor was unemployed and he

remains unemployed.  At the time of the Transfer, the Sovereign Note remained unpaid.

On May 13, 2013, judgment entered against the Debtor, jointly and severally with

codefendant Jun Yang, in the Amos CT Action in the amount of $127,872.90, plus costs of

$64.63 and attorneys fees of $19,180.95.  On August 22, 2013, Amos filed a complaint in

the Middlesex Superior Court, Civil Action No. 2013-03723-D, seeking to enforce the

---

Id.

[6] The 2012 Mortgage sets forth the identity of the mortgagee as Provident Funding
Associates, L.P.

Amos CT Action judgment ("Amos MA Action").  On September 19, 2013, the Debtor filed an answer in the Amos MA Action.

On August 27, 2014, the Debtor recorded another Declaration of Homestead on the Property.

The Debtor filed a petition for relief under Chapter 7 on September 15, 2014, while the Amos MA Action was pending.  At the time the Debtor filed his Chapter 7 case, the value of the Property was $981,072.00.  As noted above, the Debtor scheduled the value of his interest in the Property on Schedule A as $327,024.00.

At the time he commenced his Chapter 7 case, the principal balance owed on the 2012 Mortgage was $381,632.25.  The parties stipulated that the Debtor had no nonexempt assets.  At the time he filed his Chapter 7 case, the Debtor owed $145,039.50 on the Sovereign Note.  He included on Schedule F only one other debt, i.e., $2,574.13 owed to Chang and Yoo, LLP for "2013-2014 legal services."

The current value of the Property is approximately $1,050,000.00.  The Debtor, Mrs. Chiang, and Stephen continue to reside at the Property.

C. Affidavits Submitted by the Defendants and the Trustee

The Debtor and the Defendants filed Affidavits in support of the Opposition to the Motion for Summary Judgment.  The Debtor represented in his Affidavit, which he signed under penalty of perjury on October 13, 2016, that when he and Mrs. Chiang were preparing to finish the paperwork with respect to the 2012 refinancing of the Property "we were told we needed to add the income of our son, Stephen and to do so we need to deed the property from us to us and our son."  He added that "we refinanced to pay off

the old mortgage loan and to pay the costs of the refinance," adding that "we did not take any money ourselves" and that "[t]he only change was the interest rate." The Debtor also represented that at the conclusion of the ClearOne case in Utah [i.e., April 21, 2009] he was told to cease contact with Jun Yang and Lonny Bowers, which included "*changing my email from gmail to Verizon.*" Accordingly, the Debtor represented that he was unaware of the Amos CT Action at the time of the 2012 refinancing of the Property.[7] Nevertheless, at an April 11, 2016 deposition conducted by Trustee's counsel six months earlier, he testified under penalty of perjury that his email address was <u>achiang8@gmail.com</u>. Moreover, the Trustee submitted the Affidavit of Leon P. Cameron, Esq., the attorney for Amos in the Amos CT Action in which Attorney Cameron represented under penalty of perjury that "Mr. Chiang was on notice of the case for over two years because I copied him on virtually every email that I sent to the Co-Defendants in that case . . . ." In addition the Trustee submitted email correspondence between Lonny Bowers and the Debtor, including an email dated September 13, 2013 regarding the Amos CT Action. Thus, the Court concludes that the Debtor learned of the Amos CT Action in 2011 because he received correspondence properly addressed to him at his home in Lexington and emails from Attorney Cameron and others as he continued to use his Gmail account after the conclusion of the Utah action. He also remained in contact with Lonny Bowers.

Mrs. Chiang reiterated her husband's statement with respect to the need to add their son's income as part of the refinancing. Stephen in his Affidavit also represented

---

[7] As noted below, the Debtor testified at his deposition that took place six months before he executed his Affidavit that his email address was achiang8@gmail.com.

that "I was asked to join as a borrower on a refinancing of my parent's house in 2012,"
adding "I was told this would include the house being deeded from them to the three of
us."  He also stated that he considered the Property to be his parents' residence and that
he lives at home and contributes to the finances "as we as a family agree."

Neither the Debtor nor the Defendants identified the individual at Provident
Funding who told them that their son's income was required for the refinancing or why
his name was required to be added to the deed and whether Stephen was required to
document his income either through the submission of tax returns or a financial
statement.  In addition, neither the Debtor nor the Defendants represented that Stephen
was employed at the time of the Transfer, and, if he was employed, the name of his
employer and the amount of his income.  Moreover, the Debtor and Mrs. Chiang do not
appear to have been in default with respect to the 2008 Mortgage at the time of the
refinancing.

D. Judicial Notice of the 2010 Massachusetts District Court Action

The Trustee asks this Court to take judicial notice of the decision in ClearOne
Commn'cs, Inc. v. Chiang, 717 F.Supp.2d 142 (D. Mass. 2010), in support of his "actual
intent" count under Mass. Gen. Laws ch. 109A, § 5(a)(1) and 5(b), particularly factor (5),
"the transfer of substantially all the debtor's assets."  The Defendants, while conceding
the existence of the lawsuit, maintain that reliance on that decision, which involved the
Debtor's conduct in regard to the 2008 Mortgage is too prejudicial to be considered by
this Court.

In <u>Kowalski v. Gagne</u>, 914 F.2d 299 (1st Cir. 1990), the United States Court of Appeals for the First Circuit affirmed a decision of the district court which took judicial notice of a murder conviction in determining damages in a wrongful death action, stating: "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." <u>Id.</u> at 305. This Court concludes that the district court's decision in <u>ClearOne Communications</u> is relevant to matters at hand as the prior action in the district court involved the same Property and the Debtor's decision to mortgage otherwise unencumbered property and the facts relied upon by the district court are undisputed.

In <u>ClearOne Communications, Inc. v. Chiang</u>, ClearOne sought to enforce its Utah judgment against the Debtor and another defendant, Jun Yang. Specifically, it sought an order "that the defendants' declarations of homestead, both of which occurred after the verdict was returned in the Utah case, and Chiang's recent mortgage of his property [the 2008 Mortgage] are all subordinate to ClearOne's Utah judgment." 717 F.Supp.2d at 143.[8]

---

[8] The district court determined:

> [D]efendant Chiang granted a mortgage on his residence to secure a loan in the amount of $417,000. The mortgage records Donald Bowers ("Bowers Senior"), the father of co-defendant Bowers Junior, as the mortgage loan originator. According to ClearOne, Bowers Senior is the Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") of Signature Mortgage and Financial Services, Inc. ("Signature") which was the original mortgagee. Chiang avers, however, that Flagstar Bank ("Flagstar") is the true mortgagee and that Bowers Senior and Signature only facilitated the transaction.

It also sought a determination that the Debtor's homestead declaration did not exempt the Property and that the Debtor's grant of the 2008 Mortgage to Signature was a fraudulent conveyance. While finding in the Debtor's favor with respect to his Homestead Declaration, the district court, after thoroughly reviewing the parties' arguments, ruled as follows:

> Despite the confusion surrounding Chiang's mortgage, there is substantial evidence that the subject conveyance was fraudulent and the Court so finds for the following reasons:
>
> 1) The amount of the mortgage, combined with the homestead exemption, represents a "purported transfer of all or substantially all of the debtor's property". F.D.I.C., 13 F.3d at 32.
>
> 2) There is evidence of a special relationship between the debtor and the transferee, despite Chiang's insistence that Signature and Bowers Senior only facilitated the transaction. Id. Indeed, the fact that Chiang declined this Court's invitation to provide further evidence as to the relationship between Signature, Bowers Senior, Chiang and Flagstar indicates as much.
>
> 3) An alleged overpayment of $35,454 to Wideband for legal fees was sent back to Chiang's wife instead of to Chiang which demonstrates an attempt to avoid ClearOne's judgment against him.
>
> 4) Chiang's supplemental memorandum contains what are apparently additional misrepresentations, such as a) accounting for the entire $124,000 payment to Wideband, which occurred before the Flagstar mortgage disbursement, in his report of how those mortgage funds were spent and b) the disingenuous assertion that his family, in apparent financial trouble, was "forced" to solve their need for transportation by purchasing a $17,000 vehicle.
>
> 5) ClearOne's speculation with respect to Chiang's wrongful disposition of the mortgage funds and his less than full disclosures is credible.

---

ClearOne Commc'ns, Inc. v. Chiang, 717 F. Supp. 2d at 143–44. Though given an opportunity to establish that Signature only facilitated the transaction, the Debtor did not supply any additional information. Id. at 144, n.1.

ClearOne Commc'ns, Inc., 717 F.Supp.2d at 147–48. In sum, the court accepted ClearOne's argument that the Debtor engaged in an "equity sopping" scheme, id. at 147, and allowed ClearOne's motion to subordinate the 2008 Mortgage to its Utah judgment.

As noted above, the Debtor settled ClearOne's claims on February 21, 2012, and, approximately four months later, transferred the Property, together with Mrs. Chiang, to themselves and Stephen as joint tenants, simultaneously refinancing the Property. Thus, the Provident Funding mortgage was substituted for the Signature/Flagstaff loan, which had been determined to have been a fraudulent transfer.

## III. POSITIONS OF THE PARTIES

### A. The Trustee

As a preliminary matter, the Trustee relies on 11 U.S.C. § 544(b)(1), which provides that a trustee may avoid a transfer of property that is avoidable under nonbankruptcy law, provided that there is an actual unsecured creditor who could avoid such a transfer. Because the parties have stipulated to the existence of a creditor at the time of the Transfer of an interest in the Property to Stephen, a debt which remains unpaid, the Trustee maintains that he may use the avoiding power under §544(b)(1) to avoid the Transfer as it occurred in 2012 - - less than four years prior to the commencement of the Debtor's bankruptcy case. See Mass. Gen. Laws ch. 109A, § 10.[9]

---

[9] Section 10 provides:

A cause of action with respect to a fraudulent transfer or obligation under this chapter shall be extinguished unless action is brought:

The Trustee contends that the Transfer may be avoided under Mass. Gen. Laws ch. 109A, § 5(a)(1) because of the existence of several badges of fraud evidencing actual intent to hinder, delay, or defraud any creditor of the Debtor, coupled with the Debtor's prior fraudulent transfer by means of the grant of the 2008 Mortgage on the then unencumbered Property.  Citing Mass. Gen. Laws ch. 109A, § 5(b), which sets forth eleven badges of fraud, and ClearOne Commc'ns, Inc. v. Chiang, 717 F.Supp.2d 142 (D. Mass. 2010), as well as Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991), the Trustee contends that of the eleven indicia of fraud set forth in § 5(b), six are present with respect to the 2012 transfer, namely

> 1. The Transfer was to the Debtor's son, an insider;
> 2. The Debtor retained possession and control of the Property;
> 3. The Debtor was being sued at the time of the Transfer;
> 4. The Transfer was of substantially all of the Debtor's assets;
> 5. The Debtor did not receive reasonably equivalent value for the Transfer;
> 6. The Transfer occurred when the Debtor was insolvent or the Transfer rendered the Debtor insolvent.

---

(a) under paragraph (1) of subsection (a) of section five, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(b) under paragraph (2) of subsection (a) of section five or subsection (a) of section six, within four years after the transfer was made or the obligation was incurred; or

(c) under subsection (b) of section six, within one year after the transfer was made or the obligation was incurred.

Mass. Gen. Laws ch. 109A, § 10

(footnotes omitted).  Indeed, the Trustee states that the parties have stipulated to the first three factors, and, as noted below, the Defendants concede that the Debtor was insolvent.

Focusing first on whether the Transfer was of substantially all of the Debtor's assets, the Trustee contends that the Property is considered an asset of the Debtor[10] had nonexempt equity in it at the time of the Transfer.  At the time of the Transfer, the parties stipulated that the Property, which was subject to a homestead exemption of $500,000.00 pursuant to Mass. Gen. Laws ch. 188, § 1, was worth $995,000.00.  Thus, at the time of the Transfer, the value of the Debtor's tenancy by the entireties interest in the Property, according to the Trustee, was approximately $47,500.00 ($995,000.00 - $500,000.00 = $495,000.00 - $400,000.00 (2008 Mortgage) = $95,000.00 ÷2 = $47,500.00).   After the Transfer, the Debtor became a one-third owner of the Property as a joint tenant with Mrs. Chiang and Stephen and the Property remained subject to a mortgage in the approximate amount of $400,000.00.  The Trustee concludes:

> [T]he Parties have stipulated to the fact that the Debtor had no unexempt [sic] assets at the time of the case filing and furthermore, that "[t]he Debtor's

---

[10] Mass. Gen. Laws ch. 109A, § 2 provides in pertinent part:

"Asset", property of a debtor, but the term shall not include:

> (i) property to the extent it is encumbered by a valid lien;
> (ii) property to the extent it is generally exempt under nonbankruptcy law; or
> (iii) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

Mass. Gen. Laws ch. 109A, § 2.

financial situation, including the value of his assets and the amount of his liabilities, was essentially the same at the time of the Transfer as at the time of his bankruptcy case filing. . . ." Given the exclusion of exempt property from the definition of "asset," the Debtor's only asset for purpose of the Mass. UFTA was his nonexempt equity in the Property, which was given to his Son at the time of the Transfer.  As in the case of <u>ClearOne Communs., [sic] Inc. v. Chiang</u>, "[t]he amount of the [transfer], combined with the homestead exemption, represents a 'purported transfer of all or substantially all of the debtor's property."

(footnotes omitted).

In addition to his argument that there was a transfer of substantially all the Debtor's assets, the Trustee contends that the Debtor received no consideration for the Transfer and any benefit to the Debtor from the refinancing does not constitute reasonably equivalent value.  Citing Mass. Gen. Laws ch. 109A, § 4(a),[11] and <u>Lassman v. Reilly (In re Feeley)</u>, 429 B.R. 56, 63 (Bankr. D. Mass. 2010), the Trustee asserts that once a determination is made that the debtor received value, the court must then examine whether the value is reasonably equivalent to what the debtor gave up, noting that "Th[is] second inquiry, whether what the debtor gave up was reasonably equivalent to what he received, is more difficult'" <u>In re Feeley</u>, 429 B.R. at 63 (citing <u>Helms v. Roti (In re Roti)</u>, 271 B.R. 281 (Bankr. N.D. Ill. 2002), *aff'd*, 2003 WL 1089363 (N.D. Ill. Mar.11, 2003)).  Noting that the parties stipulated that a one-third interest in the Property was transferred to Stephen for $1.00 at the time the Property was worth $995,000.00, the

---

[11] Section 4(a) provides:  "(a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.  Mass. Gen. Laws Ann. ch. 109A, § 4(a)."

Trustee contends that Stephen received an interest worth $331,666.67 in exchange for

$1.00, although the Property was refinanced and the Defendants and Debtor became

obligated to repay a $400,000.00 obligation secured by the Property, albeit at a reduced

monthly payment amount.  The Trustee states that "[e]ven assuming that the refinance

resulted in a benefit to the Debtor of $1,000.00 a month, the Debtor would not receive a

fair market value for the Transfer until 330 months - - 27 and a half years – - has passed.

All the while, one-third of the increase in the equity in the Property would inure to the

benefit of the Son."  The Trustee, citing Riley v. Countrywide Home Loans, Inc. (In re

Duplication Mgmt., Inc.), 501 B.R. 462, 486 (Bankr. D. Mass. 2013), asserts that the

Transfer of the Property in exchange for a reduction in the monthly mortgage payment

does not satisfy the rationale behind requiring reasonably equivalent value because it

does not satisfy the purpose of the UFTA which is to protect a debtor's net worth for the

benefit of creditors.  In other words, he contends that the determination of reasonably

equivalent value "turns on whether the debtor's net worth has been preserved and

creditors' interests have not been injured as a result of the transfers."

The Trustee also argues that the Debtor's liabilities exceeded the value of his

nonexempt assets such that he was insolvent at the time of the Transfer or rendered

insolvent by the Transfer.  According to the Trustee, pursuant to Mass. Gen. Laws ch.

109A, § 3(a), a debtor is insolvent "if the sum of the debtor's debts is greater than all of

the debtor's assets, at fair valuation."  He adds that only nonexempt property is

considered an asset for the purposes of determining insolvency, citing Wolkowitz v.

Beverly (In re Beverly), 374 B.R. 221, 238 (9th Cir. B.A.P. 2007), *aff'd in part, appeal dismissed in part* ,551 F.3d 1092 (9th Cir. 2008).

The Trustee notes that when the Debtor commenced his Chapter 7 case, all his property was exempt and that he owed $145,039.50 on a note originally payable to Sovereign Bank, thus establishing that he was insolvent when he filed his bankruptcy petition.  The Trustee adds that the debt to Sovereign Bank was outstanding at the time of the Transfer.  He argues that "[i]f it is clear that the Debtor was insolvent at the time of the case filing and if it is admitted that the Debtor's financial situation was essentially identical at the time of the Transfer, the only possible inference is that the Debtor was also insolvent at the time of the Transfer."

With respect to Count III, the Trustee contends that he has established the four requisite elements for relief under Mass. Gen. Laws ch. 109A, § 6(a), namely "(1) that a transfer occurred; (2) at a time when a creditor was in existence; (3) that the Debtor did not receive reasonably equivalent value for the transfer; and (4) that the Debtor was insolvent at the time of the transfer or rendered insolvent by the transfer."  The Trustee notes that the parties have stipulated to the existence of the Transfer and the existence of a creditor, Sovereign Bank, at the time of the Transfer.  At the time of the Transfer, the note was in default and the present holder of the Sovereign Note, Amos, had already filed suit against the Debtor.  The Trustee, based upon his previous arguments, argues that the undisputed facts demonstrate the last two elements of a constructive fraudulent transfer: that the Debtor did not receive reasonably equivalent value for the Transfer as a matter of law and that the Debtor was insolvent or rendered insolvent by the Transfer.

22

B. <u>The Defendants</u>

The Defendants maintain that the Trustee's Motion for Summary Judgment should be denied because of the circumstances surrounding the Transfer and the existence of genuine issues of material fact as to whether Stephen gave reasonably equivalent value to the Debtor and Mrs. Chiang.  The Defendants rely upon Provident Funding's insistence that the refinancing was dependent upon the inclusion of Stephen's income to qualify for the new loan, adding that because Stephen had to sign the note and mortgage, his name had to be added to the deed.

The Defendants contend that there are insufficient badges of fraud to establish the Debtor's actual intent to hinder, delay, or defraud creditors.  The Defendants also argue that this Court should not consider the decision in <u>ClearOne Commc'ns, Inc. v. Chiang</u>, 717 F.Supp.2d 142 (D. Mass. 2010), in which the district court determined that the 2008 Mortgage obtained by the Debtor was a fraudulent transfer under Mass. Gen. Laws ch. 109A, § 5(a)(1), because it "has far more prejudicial effect than probative value."

Recognizing the six factors addressed by the Trustee, the Defendants note that the Transfer was not concealed and that the Debtor "did not remove, conceal, or abscond with the assets."  While the Defendants concede that the Debtor was insolvent, they maintain that the only purpose of the refinancing was to reduce the interest rate and no additional sums were borrowed.  In addition, the Defendants contend that, while the transfer was made after the Debtor had been sued in Connecticut, the Debtor would be

prepared to testify that he was not aware of the lawsuit until Amos filed an action in the Massachusetts Superior Court to enforce its foreign judgment.

The Defendants also argue that the Transfer did not constitute a transfer of substantially all of the Debtor's assets, stating that the Debtor "does not . . . believe that the transfer of the family home was all or substantially all of the Debtor's assets, as there were no reachable assets transferred." The Defendants base this argument on the Debtor's one-half equity in the Property prior to the Transfer of $297,500.00 ($995,000.00 - $400,000.00 =$595,000.00 ÷ 2), being protected by the $500,000.00 homestead. They add that the same result pertains after the Transfer.

With respect to the issue of reasonably equivalent value for purposes of both §5(a)(1) and 6(a) of Mass. Gen. Laws ch. 109A, the Defendants emphasize that in exchange for a one-third interest in the Property with a value of $331,666.66 ($995,000.00 ÷ 3), Stephen received more debt. i.e., $400,000.00 (debt that would appear on his credit report) than value. Under all the facts and circumstances, they contend that a comparison of what was given with what was received, including direct and indirect benefits, the Debtor received reasonably equivalent value. They note that the amount financed was the amount needed to pay off the 2008 Mortgage and that the new monthly payment amount under the 2012 Mortgage was approximately $1,000.00 less than the 2008 Mortgage monthly payment amount resulting in a savings of $360,000.00 over the 30-year life of the loan.[12]

---

[12] The parties stipulated in their Joint Pretrial Memorandum that the monthly mortgage payment was reduced to $2,869.27 [the Debtor used the sum of $2,874.18

C. <u>The Trustee's Reply</u>

The Trustee rejects the Defendants' assertion that the Debtor was unaware of the lawsuit commenced by Amos.  He contends that, although service of the complaint may have been compromised by a typographical error with respect to the Debtor's home address in the certificate of service, other pleadings were properly served at the Debtor's residence.  In addition, the Debtor received emails through his Gmail account which he represented that he still used in a deposition conducted by the Trustee's counsel on April, 11, 2016.

The Trustee, relying upon the decision in <u>ClearOne Communications, Inc.</u>, argues:

> At the time of the Debtor's prior fraudulent transfer, the Debtor, faced with a judgment, granted a mortgage that essentially removed all the nonexempt equity from the Property. The District Court found the mortgage was given with the actual intent to hinder, delay or defraud ClearOne.  That the Debtor's next fraudulent transfer would be slightly more sophisticated should not be a surprise. In the present case, rather than granting a mortgage that removed all of his nonexempt equity from the Property after a judgment had entered, the Debtor instead transferred a portion of the Property to his son in conjunction with a refinance while a lawsuit was pending. The result, however, was the same – the transfer placed nonexempt equity out of the reach of the Debtor's creditors.

The Trustee also rejects the notion that a genuine issue of material fact exists as to the Transfer of all or substantially all of the Debtor's property based upon application of the $500,000.00 homestead exemption to his separate interest in the equity in the Property

---

on Schedule J] from $3,567.27.  Accordingly, the savings was $697.76, not $1,000.00, per month at the commencement of the loan.

after deduction of the 2008 Mortgage because the Massachusetts exemption would apply to the entire equity, not just the Debtor's interest.

With respect to the issue of reasonably equivalent value, the Trustee states that "the value of the refinance is not 'similar to [the] fair market value' of the Transfer." (footnote omitted). Reiterating the absence of any factual disputes, the Trustee rejects the Defendants' contention that the reduction in the mortgage payments of $1,000.00 per month constitutes reasonably equivalent value based upon the reduction in the Debtor's monthly mortgage payment and the ostensible savings of $360,000.00 over 30 years; Stephen's joint and several liability for the 2012 Mortgage in the amount of $400,000.00; and Stephen's contributions to the family's finances. According to the Trustee, the reduction in the monthly mortgage payment of $1,000.00 per month is not equivalent to $331,666.67 because the refinanced mortgage contains an adjustable rate so that the monthly mortgage payment will change over time and may exceed the monthly fixed rate payments under the 2008 Mortgage. He adds that the net present value of the savings of $1,000.00 per month over thirty years is significantly less than $331,666.67.

**IV. DISCUSSION**

A. Summary Judgment Standard

The United States Court of Appeals for the First Circuit articulated the well established standard for summary judgment in Desmond v. Varrasso (In re Varrasso), 37 F.3d 760 (1st Cir. 1994). It stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed. R .Civ.

26

P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi—evidentiary quality-say, affidavits or depositions—that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Id. at 763. (citations omitted, footnote omitted).  In Flovac, Inc. v. Airvac, Inc., 817 F.3d

849 (1st Cir. 2016), the First Circuit elaborated:

A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing is made, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). This demonstration must be accomplished by reference to materials of evidentiary quality, see Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir.1990), and that evidence must be more than "merely colorable," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At a bare minimum, the evidence must be "significantly probative." Id. at 249–50, 106 S.Ct. 2505. The nonmovant's failure to adduce such a quantum of evidence entitles the moving party to summary judgment. See Tobin v. Fed. Express Corp., 775 F.3d 448, 450–51 (1st Cir. 2014).

Flovac, Inc. v. Airvac, Inc., 817 F.3d at 853.

B. Count I

Section 5 of Mass. Gen. Laws ch. 109A, which is applicable to this proceeding as a

result of the trustee's strong arm powers, see 11 U.S.C. § 544(b)(1), provides in pertinent

part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Mass. Gen. Laws ch. 109A, § 5(a)(1).  Section 5(b) of the statute sets forth 11 factors that are germane to a determination of actual intent:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) *the transfer was of substantially all the debtor's assets;*
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) *the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;*
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Id. at § 5(b) (emphasis supplied).[13]  Notably, the Trustee relies upon the presence of six factors, namely (1), (2), (4), (5), (8) and (9), of which only two (5) and (8) (italicized above) are disputed.

_____

[13] In Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991), the court identified the following "badges of fraud," stating:

> Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the

For purposes of § 5(b)(5), an "asset" is defined as "property of a debtor," but the term does not include property encumbered by a valid lien or property "to the extent it is generally exempt under nonbankruptcy law," or "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Id. at § 2.  Under that definition, the Debtor had no assets and his interest in the Property was subject to attachment, but not subject to execution or seizure.

The United States Court of Appeals for the First Circuit considered avoidance of a transfer under 11 U.S.C. § 548(a)(1) made with actual intent to hinder, delay, or defraud any creditor of the debtor in the seminal case of Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248 (1st Cir. 1991).  It observed:

> It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors. Therefore, as is the case under the common law of fraudulent conveyance, courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud.
>
> ***
>
> The presence of a single badge of fraud may spur mere suspicion, id.; the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent "significantly clear" evidence of a legitimate supervening purpose.

---

debtor; (4) a special relationship between the debtor and the transferee; (5) retention by the debtor of the property involved in the putative transfer.

Id. at 1254.

29

Max Sugarman Funeral Home, Inc., 926 F.2d at 1254-55 (citations omitted).

Turning to the badges of fraud set forth in Mass. Gen. Laws ch. 109A, § 5(b) that

the Defendants dispute, the Court concludes that the Debtor had no assets to transfer

under the definition set forth in Mass. Gen. Laws ch. 109A, § 2 as the Property was deeded

to the Debtor and Mrs. Chiang as tenants by the entirety. The homestead exemption

protected the entire equity in the Property which was held as "as one person, in one

tenancy." See Synder v. Rockland Trust (In re Synder), 249 B.R. 40, 44 (B.A.P. 1st Cir.

2000), aff'd, 2 F.App'x 46 (1st Cir. 2001). The estate of homestead created by Mass. Gen.

Laws ch. 188, §1 is not apportioned, as the Defendants contend, to the Debtor's "one-half

interest in the equity" which they maintain equals $297,500.00, particularly as a

declaration of homestead under § 1 is an acquisition of a homestead "for the benefit of

[the] family." See Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 7 (1st Cir. 2003)

(construing former Mass. Gen. Laws ch. 188, § 1).

In Synder, the court reviewed principles applicable to tenancies by the entirety. It

stated:

> A tenancy by the entirety is a form of concurrent ownership that can exist
> only between co-owners who are husband and wife. Id. at 148 [612 N.E.2d
> 650]. In such a tenancy, husband and wife "are seised of the estate so
> granted as one person, and not as ordinary joint tenants or tenants in
> common." Id. at 148 [612 N.E.2d 650], quoting from Raptes v. Pappas, 259
> Mass. 37, 38, 155 N.E. 787 (1927) (emphasis added). Therefore, husband and
> wife hold the property not as "two tenants by the entirety," but as one
> person, in one tenancy. The point is more than semantic; it underscores that
> a tenancy by the entirety is a "unitary title": a title in which the interests of
> both husband and wife extend to the whole of the property, not merely to
> some fractional interest that the other does not also hold. Coraccio, 415
> Mass. at 151, 612 N.E.2d 650. Each spouse's interest in and rights as to the

whole are well-protected from compromise by the other. For as long as the
marriage continues, the estate cannot be severed, terminated, or partitioned
by either spouse without the assent of the other. Id. at 149 [612 N.E.2d 650].
Either spouse may convey or encumber his or her own interest, id. at 152
[612 N.E.2d 650], but the interest so conveyed would be subject to the
continuing rights of the other in the property, such that the interest
conveyed would, among other things, be wholly defeasible upon the death
of the conveying spouse and survivorship of the other. Id. The property
held in a tenancy by the entirety can be attached by the creditors of one
spouse, Peebles v. Minnis, 402 Mass. 282, 521 N.E.2d 1372 (1988), but, in a
tenancy created after the effective date of G.L. c. 209, § 1, the debtor spouse's
interest is not subject to seizure or execution by his or her creditors while
the property remains the principal residence of the nondebtor spouse. G.L.
c. 209, § 1. A tenancy by the entirety "continues during the existence of the
marital relationship and cannot be changed except by death, divorce, a deed
of both parties or a deed of one spouse to the other." Campagna v.
Campagna, 337 Mass. 599, 605, 150 N.E.2d 699 (1958); In re Conroy, 244
[224] B.R. 282, 285 (Bankr.D.Mass.1998) (Hillman, J.). Upon the occurrence
of one of these events, however, the tenancy by the entirety is terminated,
and the spouses' unitary title with it. What rights then replace that title? The
answer depends on how the tenancy is terminated.

In re Snyder, 249 B.R. at 44.  In view of those principles, the Defendants' position is

correct:  the Debtor did not transfer any reachable assets.  Although there was equity in

the Property at the time of the Transfer in the approximate sum of $95,000.00, under Mass.

Gen. Laws ch. 109A, §2, that equity cannot be considered an asset due to the exclusion of

"an interest in property held in tenancy by the entireties to the extent it is not subject to

process by a creditor holding a claim against only one tenant."

Turning to the Debtor's receipt of reasonably equivalent value for the Transfer, the

Court concludes that the Debtor received no direct value for the Transfer to Stephen other

than the stated consideration of $1.00 and that as a result of the Transfer, the value of the

Debtor's ownership interest in the Property decreased to a one-third interest as a joint

tenant and Stephen received a property interest worth $331,666.66.  Moreover, following

31

the Transfer, the existing homestead protected the Property as there was no conveyance to a non-family member. *See* Mass. Gen. Laws ch. 188, § 10.

The Debtor and Mrs. Chiang obtained an indirect benefit as a result of the Transfer in the form of an initial lower interest rate. The Defendants assert that Stephen was responsible for the reduced interest rate, but, in fact, it was Provident Funding who refinanced the 2008 Mortgage and provided the lower interest rate to the joint tenants. Thus, in the Court's view, the Debtor transferred an undivided interest in the equity in the Property valued at $95,000.00 to Stephen for $1.00. In exchange, Stephen obtained an interest in the Property of $31,666.66 after accounting for the 2012 Mortgage and the homestead exemption.

The Court observes that while Stephen executed the note and 2012 Mortgage, there was no evidence that he was employed or any evidence that, if he were employed, who his employer was, and the amount of his compensation. In other words, there was no evidence that Stephen's income actually was required to enable the Debtor and Mrs. Chiang to make their monthly mortgage payments, particularly as it appears that the couple was making payments in the sum of $3,567.03 prior to the 2012 refinancing. Indeed, in view of the stipulated facts that the Debtor contributed $350,000.00 toward his sons' education, that the Debtor listed $-0- as son's household contribution on Schedule J, and that Stephen now contributes, in his words during his April 11, 2016 deposition, "around $200 a month," to the family by paying cell phone bills, the Court is unable to conclude that the transfer of a one-third interest in the Property worth $33,166.66 for $1.00 was reasonably equivalent value, despite the liability on the 2012 Mortgage incurred by

Stephen where the Defendants produced no evidence that Stephen paid or was expected to pay any portion of the monthly mortgage payment or paid rent to his parents commensurate with living in Property now worth $1,050,000.00.

The Defendants contend that the reduced payments of $1,000.00 per month over the life of the loan equal $360,000.00 and constitute reasonably equivalent value.  The Court finds that this argument fails to raise a genuine issue of material fact for three reasons.  In the first place, it is pure speculation that the reduced payments equal $1,000.00 per month.  The mortgage interest rate is adjustable and could increase up to 7.5%, a rate higher than the 2008 Mortgage.  Under those circumstances, the monthly mortgage payment would be more than what the Debtor and Mrs. Chiang were paying prior to the Transfer.  Similarly, the Defendants' calculation is predicated upon the Defendants retaining ownership of the Property for 30 years on the same terms as the 2012 Mortgage.  The Defendants produced no evidence that the Property would be held for that length of time, indeed any length of time after the conclusion of the Debtor's bankruptcy case.  Finally, the Defendants, without analysis, assume that the full benefit of the reduced interest rate should be attributed to the Debtor's interest in the Property when the Property was held in a tenancy by the entirety by the Debtor and Mrs. Chiang.

Under those circumstances, the Court concludes that the Debtor's transfer of his interest in the Property, though not technically an asset for purposes of Mass. Gen. Laws ch. 109A, § 5(b)(5) was a transfer for less than reasonably equivalent value.  The Defendants' calculation of the value of the reduced interest rate is too speculative to

33

warrant a determination that it constituted reasonably equivalent value. *See* <u>Flovac, Inc.</u>

<u>v. Airvac, Inc.</u>, 817 F.3d at 853.

Based upon the the factors set forth in Mass. Gen. Laws ch. 109A, § 5(b) as well as

those identified by the First Circuit in <u>Max Sugarman Funeral Home, Inc.</u>, 926 F.2d at

1254, namely the actual or threatened litigation against the Debtor by Amos; the Debtor's

admitted insolvency; Stephen's special relationship with the Debtor as his eldest son; and

retention of the Property by the Debtor, the Court concludes that there are no genuine

issues of material fact and that the Trustee is entitled to summary judgment on Count I.

The undisputed facts reveal to this Court that the Debtor understood the concept of

"equity sopping" and, thus, conveyed his equity interest in the Property with actual

intent to hinder, delay, and defraud an existing creditor.

C. <u>Count III</u>

Section 6 of ch. 109A provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the obligation
> was incurred if the debtor made the transfer or incurred the obligation
> without receiving a reasonably equivalent value in exchange for the
> transfer or obligation and the debtor was insolvent at that time or the debtor
> became insolvent as a result of the transfer or obligation.

Mass. Gen. Laws ch. 109A, § 6(a).  The Defendants have admitted that the Debtor was

insolvent at the time of the Transfer and that a creditor existed.[14]  Moreover, the Court

---

[14] The Court does not credit the Debtor's Affidavit, which was filed on October 13,
2016, in which he represented that he was unaware of the Amos CT Action,
because he ceased using his Gmail email address.  This averment, even assuming
relevancy, is inconsistent with his prior deposition testimony. *See* <u>Escribano-Reyes</u>
<u>v. Prof'l Hepa Certificate Corp.</u>, 817 F.3d 380, 387 (1st Cir. 2016).

has determined that the Debtor did not receive reasonably equivalent value for the Transfer to Stephen of his interest in the Property.  Prior to the Transfer, on August 10, 2007, the Debtor signed a personal guaranty on a $100,000.00 note to Sovereign Bank, which remains unpaid.  As of June 28, 2012, the note was in default and Amos, the present holder of the note, had commenced an action against the Debtor.  Accordingly, there are no material facts in dispute and the Trustee is entitled to summary judgment on Count III of his Complaint.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion for Summary Judgment on Counts I and III of his Complaint and overruling the Defendants' Opposition.  The Court also shall enter an order declaring as moot Count II of the Complaint as the Trustee sought to avoid the transfer as a fraudulent transfer pursuant to that count and scheduling further proceedings on Count IV through which the Trustee seeks to sell the interest of the other co-owner.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  December 21, 2016